Good morning. Good morning. May it please the court, Frederick Ulrich on behalf of the appellant, Kevin Samuel Santos Diaz, and I'd like to reserve two minutes of my time for rebuttal. In this case, the issues in our view turn upon the degree to which a district court has authority to manage. Can you keep your voice up please? I'm sorry. The degree to which a district court can manage and in fact effectively end a relationship between two consenting adults to the issuance of a no contact order during the period that Mr. Diaz is incarcerated and also during his period of supervised release. We think the court erred for several reasons. Can we look at it, look at this conundrum separately? One way during the period of incarceration and then another during the period of supervised release. Absolutely. And for good reason because Congress legislated into one area and didn't in the other. Well, yes. That would be a starting point of a discussion. So I know that you argue that there's no legislation in one instance and so forth, but let's just look at post-incarceration. Clearly, the court has statutory authority to impose certain conditions during that period of time, right? We agree with that. Correct. And if we look at 3553A and 3583, there's certainly some basis for the imposition of conditions of supervised release that would place certain restraints on a no longer incarcerated defendant, now probationer, serving a period of supervised release, right? So as we think about a no-contact order, there seems to be a statutory basis for its imposition. What's the problem as we think through that post-incarceration period? Well, primarily it works this way. So clearly the court has quite a bit more leeway in the post-incarceration circumstance because Congress has provided legislation and in fact has identified several conditions. But where those conditions, as this court has said, impact or affect a fundamental right, here two sets of constitutional rights under the First Amendment, then the condition has to be directly... Well, let's assume that, let's assume we're not persuaded there's a constitutional dimension. What's your argument then only as the supervisor release? We wouldn't have very much of an argument if there was no constitutional dimension because the court has quite a bit of leeway. Here, I would suggest that the absence of specific findings relative to the no-contact order, if we were to assume it had no constitutional basis, which I think what we believe is it does. I mean, there's clearly a First Amendment component to the ability to communicate, associate with somebody that you've got a relationship with. But even if you assume a constitutional... We'll play with the judge's hypothetical for a moment. Even if you assume a constitutional dimension for a moment, the requirement on the part of the district court in levying its decision would be focused on, was it narrowly tailored? Here, we're talking about one person, and we're talking about a specified period of time, a period of supervised release. If you don't think that is sufficiently narrowly tailored, then tell me what condition or what specification would the court have to have reached in for it to meet narrowly tailored if you disagree with the premise that I've just said. We don't believe there's any way under existing constitutional precedent from the United States Supreme Court that that's narrow tailoring. Simply telling somebody that they can't engage in one set of First Amendment activity because they can engage in some other, that can't be narrow tailoring. So you're saying there's no way to narrowly tailor? No, there is. This court's actually addressed it, albeit a non-precedential opinion in Rodriguez, where husband and wife are incarcerated, no contact order issued. And on the back end, the court said, well, you can have contact to the extent that the probation officer oversees it, makes some sort of discretionary determination of its appropriateness under the circumstances. That would be narrow tailoring. And it's happened in several other cases. You could have narrow tailoring where they can't cohabitate, perhaps, but they can communicate. It could have narrow tailoring where the court dictates the type of communication, maybe just by correspondence. But what if communication is the problem? I'm sorry? What if communication is the problem? I'm here. In this situation, communication was the problem because Mr. Diaz was using communication with his girlfriend to induce her to destroy evidence and not to testify. Well, I think that once he's been punished for that, and he has been. But we don't want it to happen again. No, we don't want it to happen again. But I think the probation office could regulate the nature of the communication. It could be supervised. Somebody, a family member could. I mean, maybe he's going to go after her for revenge for having gotten him into this situation in the first place. And that certainly was a possibility from what was heard in the prior conversations. And in order to protect her, and also in order to protect others who might give that sort of testimony in the future, the way to keep him from threatening and intimidating witnesses and cooperating witnesses is to keep him from communicating with them. Well, if we're going to base the degree of constitutional protection on some speculation that you might do something wrong in the future, well then, if that's the standard, then you can just blight. You could impose absolutely no communication with anybody. But he has done something wrong in the past and has denied doing it. I'm sorry? He did. He has done something wrong in the past and he's denied doing it while, in fact, he was doing it. Well, I'm not sure about whether he denied doing it here. I mean, the court had before it a record of what occurred. Well, the court has a record of what has occurred in the past. And the court can make reasonable assumptions in many situations about what would occur in the future. And since he was trying to intimidate a witness, and since it is the interest of the government to protect witnesses, what can you do to make sure he doesn't engage in that kind of behavior in the future? Well, if we're talking about the supervised release context, as opposed to the, your question seems to assume that. Well, I mean, either, in either situation, supervised release or while he is in prison. Well, so Congress has actually legislated in this area. That's one of the problems we have with the court's blanket order during incarceration. It's based on this Wheeler case, but the Wheeler case. Just stay with supervised release for a moment because that's a, it is too disturbing. I, Okay, I understand Judge Ross's question to touch upon both, but, but could you focus first on the supervised release? Well, I, there's plenty of ways to monitor interactions between people on supervised release. Perhaps, perhaps the probation office recommends that he undergo counseling, perhaps they recommend that, if I could have a communication. Why would you do that based on the record that you have? That, that, that's what I don't understand. I, I, one of the things I think that I can speak for my colleagues, you know, we're, we're troubled by what, what the record is, right? What, what he engaged in, right, before. Well, there's a couple of problems with that. First of all. Yeah, tell me. And, and it's easy to do because, you know, we're looking at the thing from the standpoint of how it, how it developed at the initial hearing, but he pled guilty to a disorderly conduct. That's what the state determined was the appropriate disposition of offense. They could have prosecuted that case. They do it all the time. If they had a video, they had, they had, they had recorded the statements, they could have continued to file, but they prosecuted as a disorderly conduct. He comes into court on the supervised release violation. That's what he admits to. Now, I'm not saying the judge did anything improper in considering the background of the case, but we're talking about somebody who's got a no-contact prohibition for a four-year period based on the fact that he admitted to committing disorderly conduct, and that's what the district court accepted. District court judge didn't have to accept that disposition. Could have insisted on going through with the hearing, made findings, and, in fact, in many of these cases, including the ones that are string-sided in the government's brief, a full-blown hearing took place with the, with the testimony of both the defendant and the victim. That didn't happen here, so I think that's problem number one with imposing a blanket four-year no-contact prohibition based on a disorderly conduct disposition in state court. Secondly, and circling back to the prohibition as it relates to incarceration, could you? He could certainly move to modify the terms and conditions of supervised release at some point, right? Correct, and sometimes that does happen, and sometimes that door's left open, but here it's a blanket no-contact. There's no narrow tailoring. No, no, I understand, but you agree at some point it's not definite that he will have that, if this were to remain, that he would have that term for the entirety of the four years. He has the ability based on his conduct to make an application to modify the terms, right? Yes, the statute certainly provides that you can petition for a modification of supervised release. Sometimes it happens, sometimes it doesn't. It's sort of speculative. But hasn't the young lady indicated she didn't want any contact from him in the first place? At the initial hearing, yes. Subsequently, no. In fact, we filed a supplemental appendix that includes her letter saying she wants to have contact with him, she wants to maintain a relationship, she wants to reconcile. I think if the Court's concerns were founded upon a situation in which there was a full-blown hearing, she came in and testified, that would be one thing. But that didn't happen here. And the fact that, just sticking with the supervised release component of it, the Court made no connection to a 3553A factor. It simply said there could be some hypothetical case in the future where this person might be a witness. Well, it can't be the state case, because that ended already. It's certainly not the supervised release. Can we move on to the prison situation, since your time is almost up? Certainly. We think there's four problems with blanket prohibition in the prison circumstance. One, Congress delegated to the executive branch, in the form of the Bureau of Prisons, authority for the management, care, custody, and control of inmates. This order intrudes upon that authority, and it does so without a statutory basis. And that's important because district courts are courts of limited jurisdiction that have authority prescribed by Congress. True, the Court here acted pursuant to what it believed its inherent authority, but there are a couple of problems with that. The Wheeler case, which it relied upon, was decided well in advance of several legislative efforts in this area, not the least of which is the Victim Witness Protection Act, which provides a specific provision governing this exact circumstance. The government simply files a motion requesting a restraining order, there's a hearing, and if there's reasonable grounds of threatening or intimidating witness, you get the order. And you get it for three years as opposed to four years, unless you reapply. What about Morris? I'm sorry? I said, what about Morris? Well, Morris simply followed Wheeler, and it was a bit of a different circumstance anyway. I mean, it was a child witness in that case. He had moved to withdraw his plea. It was technically in the posture of going to trial, as opposed to a post-sentencing order. Thirdly... But I thought that that order was imposed so that it would go into a post-trial phase as well. It wasn't just a pretrial order. Well, the order was imposed, yes, post-trial, but he had at that point moved to withdraw his plea. It looked like the Court was actually going to grant him permission to withdraw his plea, and it was a child witness. And I think the Court's in a different situation when you're dealing with a child in that case. And by the way, both Wheeler and Morris... I'm so sorry to interrupt you. I do beg your pardon, but I don't understand your point. Why is it a different situation with a child witness as opposed to an adult witness? So are you admitting that there are instances when inherent authority is appropriate? I think you'd have a greater foundation as a judge to make a determination in a child witness or child victim context where the person might not be at a point in their life where they, you know... They're not a consenting adult, in other words. I think the Court might have some supervisory authority there. So there would be a reason to draw a line there. I'm just curious, where would that come from? This goes to Judge Greiner's question. Where does that power come from, but the power here doesn't exist? Well, I don't want to sound like I'm conceding that there's inherent authority here when Congress has specifically legislated this. Well, you've got to do one or the other. I'm going to impress you on that, right? Because you can't say that it's, oh, this is great for a child witness, but not for mine. Well, you asked me to distinguish... Isn't there an expression lately, you can't have your cake and eat it? Well, it tastes better that way. But I believe Congress has specifically legislated in all the areas where inherent authority would normally take root. With the Victim Witness Protection Act, the Sentencing Reform Act of 1984, which enacted 3582E, which provides no contact orders post-trial, and then the Bail Reform Act, which set up a system for pretrial. I see that my time has expired. No, no, no, no. It's not going to be that easy. Come on. We've got to go back to Morris, right? Now, I really do want you... I love the way that we've been talking about, you know, sort of sliding in the chambers. But do please help me out on Morris. In Morris, it sounds like you concede that in that instance, the district court acted properly and weighed the factors, and you can see and do concede that inherent authority might be exercised by the district court properly in that instance. So both, I think all of us would like to know, how do we recognize inherent authority there and then not recognize it in our instance? Well, my first position would be it was improperly recognized there. They simply followed Wheeler without taking into consideration what Congress had done. I mean, when Congress steps in and legislates in a whole bunch of areas to prevent, you know, no contact, the court's inherent authority is naturally circumscribed or limited to that degree. And once the Victim Witness Protection Act goes into effect, I don't think Morris has statutory or inherent authority grounds to stand on. But if you were to, the fact that it was essentially anticipating a pretrial posture to the case because he had moved to withdraw his plea and there looked like there were grounds to do it, and it was a child witness would be, in our view, sufficient to distinguish it from this particular circumstance. Can you just stand in place just one second? I want to make sure that I don't have anything else. Can we chat about, just for a second, this notion of a recommendation with regard to the period of incarceration? If, pardon me, if this were a recommendation by the district court with regard to the period of incarceration, I take it that you would have no constitutional claim and that would certainly be within the authority of the district court to issue such a recommendation. It could issue such a recommendation, but I think in the context of this case, the procedural posture would have to go back to the district court for that to be imposed. I don't think this court would be in a position to basically alter the judgment and reform it into a recommendation. But that is correct. The court has authority to make recommendations. They do it all the time. Okay. Thank you so much. Thank you. Good morning. Good morning, Your Honors. May it please the Court, my name is Sean Comoni, and I represent the United States of America. This court should affirm the orders of the district court directing Evan Samuel Santos Diaz to have no contact with Amanda Fernandez because, first, the order during the term of incarceration was a permissible exercise of the inherent power of the district court to safeguard the due administration of justice. And second, Your Honor, that power, as described in Chambers v. NASCO and other cases, is a power that is inherent to a district court in order to carry out its everyday business. What business is still going on, though? The trial is concluded, right? Sentence has been imposed, judgment's been entered, docket's been closed. There's nothing left to do. So what is there left to administer? Your Honor, as was stated in the Wheeler case, this power is exercised not only to encourage this witness and protect this witness from harassment, but also to encourage future witnesses, potential witnesses in other matters, to come forward and provide information helpful to the implementation of justice. It's got to come from somewhere, though, right? I mean, I understand that's what Wheeler said. But where did Wheeler find that farce? Well, Wheeler looked at the Bitter case, Chambers v. NASCO. There are cases that the Supreme Court... But Bitter said that it couldn't apply after the trial was ended. It did look at civil cases, right, and found that that would work. And then, as near as I can tell, it added in the phrase administration of justice. So it took some civil cases that say you can certainly, you know, civil property forfeiture, for instance, right, and then it said in the criminal context, of course, that ends when the trial's over. It adds in the phrase administration of justice and says that the sum of all of that creates an inherent power to manage cases that are no longer before the court. I wonder if there's some sturdier grounding to that theory that you might offer. Your Honor, I think the reasoning of Chambers v. NASCO is compelling here. In that case, it was in the sanctions context, but it did look at a rule which allowed for sanctions in order to govern misconduct that would interfere with the due administration of justice during the course of the case. And there's nothing about Chambers v. NASCO that would not be applicable after the case is ended to impose sanctions where conduct is not necessarily directly governed by Rule 11. That would be the case here. If this inherent power did not exist, you simply would leave a district court defenseless to not be able to address a fraud perpetrated upon. Well, but again, that's all during the court. The examples you're giving are all during the pendency of the action. I mean, help me understand how this extends beyond. And then, most importantly, how it extends beyond in the criminal conduct. How about this? Suppose the district court said, I understand the statutory maximum of this offense is five years. But based on my inherent authority and all the facts and circumstances, you're going to get five years and six months. I have to assume we're going to agree that that can't work. That's correct, Your Honor. Okay. So where is the line between that which we agree would not stand as an inherent authority and this, where I assume what the defendant will say is, well, my sentence didn't statutorily authorize the imposition of this term. And now it does. It's never been charged. It's never been factually found. It's not even a crime under the laws of the United States. How is that okay where the other isn't? So, Your Honor, I think first the distinction is that there is no statute here that says that the court cannot impose a non-contact order under the circumstances here. There is a statute that says the maximum term of imprisonment for this revocation is two years. If the court went beyond that, that would violate a statutory limit. Here there is no statute that says the court cannot order within its inherent powers or within the discretion of those inherent powers that the defendant not contact a witness whom he has assaulted, harassed, and convinced to commit perjury. Your Honor, Article III judicial power is a plenary authority that gets carved away or delineated by Congress pursuant to Article I. Where it hasn't done that, the full pateau plea of inherent power. It sounded like you disagreed, but I thought that's what you just said. No, Your Honor. That's not the case. It is a court of limited jurisdiction. But as the Morris Court said, if the court has a set of circumstances in front of it where there is a fraud perpetrated upon the court, a witness threatened, the court can take upon itself and in other circumstances, not necessarily with non-contact orders, but with protection of jurors, with other circumstances after a trial, the court has the power to issue certain orders in order to protect the administration of justice. So to give you a hypothetical, if you have a case where post-sentence and a witness who testified earlier, so there's nothing before the district court now, but a witness who testifies earlier, the court's made aware of a threat, the court, using its inherent authority, could then issue a no-contact order. Your Honor, I think the circumstances are different there because if sentence has already been issued, then the court is divested of jurisdiction. Okay, very good. So let's move it back in time, right? We have a witness who during the course of the trial is threatened, pre-sentencing is threatened. The inherent authority that you're referring to would allow the imposition of a no-contact at that point. Yes, Your Honor. And what would be the length of time? How should we think about this inherent authority? Here, it's two years because the sentence is 24 months. If it were a 10-year sentence, would the inherent authority allow the district court and with our informant to say 10 years is okay? How do we think about this inherent authority? Because I think one of the issues with it as a general matter is what is its scope and what are its limits? And I think, Your Honor, that the term of imprisonment in the Morris case, for example, was longer than two years. I think without having to decide what the outer limits are, certainly if there's a statutory restriction that the maximum term of imprisonment is two years and there is a supervised release term that is two years, that the non-contact order can be delineated by that time limit. Here, you have a case where, and I think this is an important distinction, this order does not bind the Bureau of Prisons. It does not. There's no expectation stated on the record at all by the court that the Bureau of Prisons would enforce this. This was an order directed at the defendant, Evan Samuel Santos Diaz, not to have contact with Amanda Fernandez. So this differs from orders that have been overturned in the Sotelo case cited by the appellant, where the Attorney General, where the Bureau of Prisons was directed specifically to review letters from people who wanted to communicate with the defendant. This does not do that. It doesn't extend beyond the term during which the government has custody of the defendant, whether it's custody through incarceration or custody under the term of supervision. Here's one of the questions I have for you. So as we think about the general notion of sentencing, right, one notion that permeates all of that is the notion of reasonableness, right, as we think about the 3553A factors. So one of the arguments that your colleague has brought forth is, this is a four-year ban in which the court is invoking this amorphous inherent authority for part of it and is alluding, well, actually, the district court didn't allude to it. We're trying to think about whether it applies, right, this notion of the 3553A with 3583. Can we look at both of those and see whether there's a statutory authority? But the overall question of reasonableness arises. This is a four-year ban on an individual where apparently, just for the sake of our discussion, Ms. Fernandez is not as skittish about having contact with Mr. Santos-Diaz as she might at one time have expressed. How should we think about reasonableness? How is four years reasonable in this context? So, Your Honor, I think first, as a factual matter, the letter that is submitted in the supplemental appendix was a letter that Santos-Diaz practically dictated to Amanda Fernandez through those phone calls that were recorded from the prison. She sent letters, similar letters, to Judge Mannion, to the county judge. She made phone calls at his direction and stated exactly what she said in that letter, which was, I wasn't in my right mind that night. It was anxiety. I overreacted. I want to have contact with him. He's not a danger to me. It's exactly the testimony she gave before the magistrate judge at the detention hearing. I think that the district court was well within its discretion to reject that statement as not credible. I think it's entirely reasonable to look at, as the district court did, the body camera footage of the night of the arrest to see Ms. Fernandez in distress, injured, to see her visible injuries, to see the video that Mr. Santos-Diaz took himself of the 911 call, which he then posted to social media in order to humiliate her and call her a snitch. These are facts that are indisputable because they are on video. And then to hear, as the district court said, they reviewed hours and hours of prison-recorded phone calls where Mr. Santos-Diaz is directly instructing Amanda Fernandez how to recant her statement. He uses exactly those words. The things that she should say, including, we're not going to live together when I get out, that you did not mean it, that you were upset and you just wanted me to leave. She testified to that effect. I think the factual record supports the reasonableness of the non-contact order because looking at the objective evidence, the contemporaneous recordings and the recordings that were made when they were not in a courtroom or sending letters with an ulterior motive, those facts support the non-contact order. And as far as the four years, Your Honor, I think here the four years is delineated by the statute of the maximum term of imprisonment and the term of supervised release. That's the term during which the government has custody and control of the defendant, and that's a reasonable term. And as Judge Mady pointed out, the defendant can come during supervised release, petition through the probation office or directly to the court to have that modified. And if he wants to present Amanda Fernandez at that time as a witness to support that, he can do so. We discussed with your colleague, thinking about this as a dichotomy between period of incarceration and period of supervised release. You've alluded to the fact that you think it's fine during the period of incarceration because of the inherent authority. You argue that there's, I presume you'd agree also that in the period of supervised release, there's statutory authority for that, yeah? That's correct, Your Honor. Okay. So talk to us for a little bit about the First Amendment claim that your colleague raises. With regard to this. So, Your Honor, I think this circuit has set forth a standard in the cases predominantly governing internet usage, for example, in child pornography and enticement cases, where the court balances between whether there's a nexus, if the special condition has a nexus to the Section 3553A factors, but also whether it is no greater a deprivation of liberty than necessary to reasonably address the risk of future criminal activity, the rehabilitation of the defendant. And I think here, this is as narrowly tailored a restriction as the court could have constructed under the circumstances in order to address the threat that it was addressing. You have a defendant who is directly suborning perjury from a witness that is also a domestic violence victim. You have, you know, as the government disclosed in our briefing, there is an investigation of that witness tampering and obstruction of justice. So the court certainly was cognizant that both the county and the federal government may have been investigating that witness tampering and obstruction of justice going forward. You also have the need for the defendant to be rehabilitated. We routinely restrict defendants from communicating with, for example, convicted felons or previous co-conspirators. Those are also First Amendment restrictions. Those are restrictions on communication. But if it serves the rehabilitation of the defendant to prevent contact with someone who, for example, might get them into trouble again, we have defendants all the time who probation, the probation officer and the court say, you can't hang out with these people anymore. You can't talk to those people anymore. And in other circuits, these types of restrictions have been addressed. They have been addressed in the circumstances where the relationship was one of a much more closely knit relationship than a co-defendant or just another convicted felon. So the Sixth Circuit in the Bortles case, the Sixth Circuit in the Faber case, the Fisher case in the Eighth Circuit was a girlfriend, and the Wilkins case in the Eighth Circuit was a wife where the supervised release condition restricted contact between the husband and wife for three years. Those were all affirmed. The nature of the relationship is really not the key turning point here. It may be a relevant factor. But I think what's more relevant is that the nexus to the conduct is directly related to this single individual and that that's the only individual that Mr. Santos-Diaz has been ordered not to have contact with. Two questions. Just two questions, counsel. The factors that you talked about that would potentially justify those kinds of terms and conditions, that's all emanating from 3583D, right, where the district court can fashion additional conditions on the terms of supervised release to adequately deter, protect the public, prevent future crimes, things like that. So you're grounding all of the examples you've given in that statutory authority. What does that do for your argument regarding the inherent authority in the custodial part? Because it seems as though that's the very thing we don't have that you would want to appeal to. Yes, Your Honor, I see my time has expired. But to answer your question, if there was statutory authority in the context of the no contact order during incarceration, certainly that would be a different matter. But as the Morris case and the Wheeler case have shown, you don't stop the analysis at the point where you don't have direct statutory authority, and that's because there is an inherent authority for the court, essentially a self-defense mechanism, to address frauds that are perpetrated upon the court in order to protect the due administration of justice. In terms of statutory authority, Section 1514 allows for the imposition of a temporary restraining order. Right. Either by the petition of the government or by the district court's own motion. If that power exists, why isn't that sufficient to say, well, that can guard against the threat that the court was concerned about here, and how does that factor into the inherent authority? So, Your Honor, that section as well as Section 3582 don't address this set of circumstances because the inherent authority is invoked by the court directly without motion. If you need a motion from the government or from another party in order to invoke that authority and to ask the court for a noncontact order, then the court is, again, left defenseless against frauds that are perpetrated upon it. I'm pretty sure under 1514 the court could do it on its own motion. Your Honor, I may have misspoken. I may be thinking of Section 3582. I think, Your Honor, the circumstances are different, however, because here it's not only to protect the witness. It's to protect the witness in the context of protecting the due administration of justice. Right, except that goes back to Wheeler, which, as we've said, doesn't seem to have the sturdy foundation that we might otherwise want. It seems like we're edging closer to the hypothetical I posed about creating new conditions or punishments that aren't authorized by Congress. Here there is a statute that says the district court can do this, but here's how the process will work. And I understand what the government is saying, but that's not sufficient to address the problem we have here, so there must be inherent authority. But then that leads us back to, but where does that inherent authority come from? And I think one key distinction here, Your Honor, is that this is not the noncontact order during incarceration here is not punishment. It is not punitive. And if anything, the court could analogize it to an exercise of the contempt power. There is no requirement on the Bureau of Prisons to condition confinement on no contact. This was an order telling the defendant you are to have no contact with Amanda Fernandez because of all of the things you have done in the past, including his history of prior obstruction of justice, which put witnesses at risk. The court would have that inherent authority to protect witnesses in order so that going forward, even in other cases, that the district court's power to protect witnesses and administer justice is not undermined by this type of fraud on the court. Thank you, Your Honors. Just a couple of points. One, just to clarify one thing, no one is defenseless here because the court doesn't have some inherent authority that stretches beyond the end of it. Ms. Fernandez can easily go into state court like hundreds, thousands of people do regularly and get a protection from abuse order. So she's not defenseless in this thing. The court doesn't have to reach down into state court proceedings in order to defend her. Well, inherent authority goes further than that, I think, because she has demonstrated that she has cooperated at times with the defendant, even when they were both denying that she was doing so. So it's not that she is a victim. She is, in part, a perpetrator. Well, that would assume that there was some sort of proceeding with a finding. There was no proceeding with a finding here. There was an admission of disorderly conduct, and then the imposition of a supervised release penalty. So there was no finding. I mean, she didn't testify at the final revocation hearing. I know the government keeps referring to her as Mr. Diaz's suborning perjury. There was no finding to that. I mean, he went into court, admitted to a disorderly conduct, and received the penalty for which, by the way, was an upward variance from the guideline range. Secondly, the Bureau of Prisons does follow court orders. So if Judge Mannion were to have directed no computer usage, guess what? Mr. Diaz would have ended up in a place where he couldn't use core links or have any computer contact. And the government's string set of cases, Bortles and Wilkins in particular, are distinguishable for two reasons. Bortles and a group of cases like it, the person that's involved is a co-conspirator, co-defendant, or facilitated the violation. The fiance of Bortles drove on a high-speed chase, rammed into Marshalls, and then there was a finding by the magistrate where she was going to break him out of jail. That's a very different circumstance in here. In Wilkins, the victim wanted the no contact order, and there was no constitutional issue raised in that case. So those cases differ from this one substantially. And just to follow up on Judge Mady's question, I believe Section 1514 does require an application by the government. I don't think the court can invoke it without an application. When you say there are no findings, you're not alluding to the findings made in the district court's opinion? Are you talking to there were no findings made in sentencing on the violation of supervised release? Oh, no. There was a finding. We found that he committed disorderly conduct. And certainly the court was well within its authority to consider all the intended circumstances. But a finding in the sense that Ms. Fernandez testified and the court discredited her testimony and she engaged in perjury and all those kinds of things, that didn't happen here. It was simply a— But the district court was relying on the findings. I mean, the district court has an understanding of a full panoply of facts, right? Correct. Which is obviously reflected in its district court opinion and the findings made pursuant to that. So if the argument isn't that he didn't make these findings anew at the sentencing for the violation of supervised release, I don't understand what the void is as far as findings go. I don't believe there were any findings about her conduct. I mean, there was an initial appearance. She was—Mr. Diaz was released. Government moved to have the order reconsidered and he was detained. They did play—and we're not disputing what the video or audio tapes say, but there was no specific findings in a contested hearing as to what she did or didn't do or whether she was credible or not credible. And for these reasons, we'd ask the court to vacate and remain. Thank you. Okay, thank you. Counsel, thank you very much. We appreciate the arguments and we'll take the matter under advisement.